IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

JERRY HARMON,                          )
                                       )
            Plaintiff,                 )
v.                                     )        CIV-03-1465-W
                                       )
JUSTIN JONES, Director,                )
                                       )
            Defendant.                 )

FIFTH SUPPLEMENTAL REPORT  AND  RECOMMENDATION

In January 2003, Plaintiffs Jones, Fulbright, and Cottriel, who are or were state

inmates, filed separate 42 U.S.C. § 1983 actions in this Court. Jones v. Ward, Case No. CIV-

03-98-A; Fulbright v. Ward, Case No. CIV-03-99-A; Cottriel v. Ward, Case No. CIV-03-

125-A. In substantially identical Complaints, the three Plaintiffs each alleged that his First

Amendment right to freely exercise his Orthodox Judaism religion was violated by

Defendant Ward's refusal to grant his request for a Kosher diet.  Each Plaintiff sought only

injunctive relief against Defendant Ward in his official capacity as the Director of the

Oklahoma Department of Corrections ("ODOC") to secure the provision of a Kosher diet

consistent with the principles of Orthodox Judaism and that satisfied the nutritional value

standards set by the American Correctional Association at no charge to the Plaintiffs.

On June 6, 2003, former United States District Judge Wayne Alley entered an Order

consolidating the three cases. Doc. # 12, Case No. CIV-03-98-A (Order, June 6, 2003)(Alley,

Wayne E., D.J.).  The consolidated action was referred to the undersigned Magistrate Judge

for initial proceedings pursuant to 28 U.S.C. § 636(b)(1)(B).  Subsequently, Plaintiff Jones was dismissed from the consolidated action as Plaintiff Jones was no longer in custody. Doc. # 16, Case No. CIV-03-98-A (Order, Aug. 11, 2003)(Alley, Wayne E., D.J.).  On February 6, 2004, the remaining consolidated cases were reassigned to United States District Judge Lee West for all further proceedings. Doc. # 42, Case No. Civ-03-99-W; Doc. # 52, Case No. CIV-03-125-W.  The cases were again referred to the undersigned Magistrate Judge for further proceedings pursuant to 28 U.S.C. § 636(b)(1)(B).  With the consolidated actions filed by Plaintiffs Fulbright and Cottriel, the undersigned Magistrate Judge joined a similar action filed by a third Plaintiff, Mr. Harmon, in Case No. CIV-03-1465-W.

Plaintiffs filed *pro se* motions for a preliminary injunction, and counsel was appointed to represent the Plaintiffs.  Thereafter, an evidentiary hearing on the motions was conducted. In a Second Supplemental Report and Recommendation the undersigned recommended that the motions for preliminary injunction be granted.  In January 2005, the recommendation was adopted, and Defendant Ward was ordered to provide "these three plaintiffs a kosher diet at no cost to them until further Order of the Court." Doc. # 70, Case No. CIV-03-99-W (Order, Jan. 21, 2005)(West, Lee, D.J.); Doc. # 79, Case No. CIV-03-125-W (Order, Jan. 21, 2005)(West, Lee, D.J.); Doc. # 44, Case No. CIV-03-1465-W (Order, Jan. 21, 2005)(West, Lee, D.J.).

In an Order entered April 21, 2005, Judge West, citing 28 U.S.C. § 3626(a)(1), found that the preliminary injunction issued by the Court was "narrowly drawn, extend[ed] no further than necessary to correct the violation of the plaintiffs' right to the free exercise of

their religion guaranteed by the free exercise clause of the first amendment to the United States Constitution and [was] the least intrusive means necessary to correct this violation." Based on these findings Judge West extended the preliminary injunction beyond April 25, 2005, the date on which it was set to expire. Doc. # 78, Case No. CIV-03-99-W (Order, April 21, 2005)(West, Lee, D.J.); Doc. # 89, Case No. CIV-03-125-W (Order, April 21, 2005)(West, Lee, D.J.); Doc. # 52, Case No. CIV-03-1465-W (Order, April 21, 2005)(West, Lee, D.J.).

In December 2005, Defendant Jones, in his official capacity as the Director of ODOC, was automatically substituted for former ODOC Director Ward pursuant to Fed.R.Civ.P. 25(d)(1). Doc. # 126, Case No. CIV-03-99-W (Order, Dec. 1, 2005)(West, Lee, D.J.); Doc. # 137, Case No. CIV-03-125-W (Order, Dec. 1, 2005)(West, Lee, D.J.); Doc. # 98, Case No. CIV-03-1465-W (Order, Dec. 1, 2005)(West, Lee, D.J.).

Motions for summary judgment filed by the Plaintiffs were granted by the Court, and in the Judgment entered February 8, 2006, Judge West issued a permanent injunction ordering Defendant Jones, in his official capacity as the ODOC Director, to "immediately provide to the plaintiffs Kosher diets at no cost.  Such diets shall comply with all nutritional requirements and standards currently applicable to the diets served to all other inmates in the custody of the [ODOC]." Doc. # 134, Case No. CIV-03-99-W (Judgment for Permanent Prospective Injunctive Relief, Feb. 8, 2006)(West, Lee, D.J.); Doc. # 145, Case No. CIV-03-125-W (Judgment for Permanent Prospective Injunctive Relief, Feb. 8, 2006)(West, Lee, D.J.); Doc. # 106, Case No. CIV-03-1465-W (Judgment for Permanent Prospective

Injunctive Relief, Feb. 8, 2006)(West, Lee, D.J.).  On July 28, 2006, the Tenth Circuit Court of Appeals dismissed the appeal of the consolidated cases based on a stipulation of dismissal filed by the parties. Cottriel, et al., v. Evans, et al., Nos. 06-6099, 06-6163 (10th Cir. July 28, 2006)(unpublished order).[1]

On September 15, 2011, Plaintiff Harmon moved for contempt.  In an Order entered December 22, 2011, District Judge West made the following findings:

> Prior to the entry of judgment in this case, DOC in 2005 enacted a protocol for Kosher Menu Preparation and Serving . . . and all DOC facilities were instructed on the preparation, service and delivery of kosher meals. . . . It is undisputed that Harmon, while housed in DOC medium security prisons, received a Kosher diet in compliance with the Court's Judgment for Permanent Prospective Injunctive Relief and DOC Kosher Diet Protocol and that those correctional facilities that follow DOC policy do not violate Kosher law.

Doc. # 158, Case No. CIV-03-1465-W (Order, Dec. 22, 2011)(West, Lee, D.J.).  The Court denied Plaintiff Harmon's motion for contempt and found that Defendant Jones had "made considerable and diligent efforts not only to substantially comply with the Court's Judgment for Permanent Prospective Injunctive Relief but also to ensure continued compliance and to resolve complaints lodged by Harmon." Id.  The Court also ordered that its Judgment for Permanent Prospective Injunctive Relief issued on February 8, 2006, continue in force and effect. Id.

---

[1]ODOC's public records reflect that Plaintiff Fulbright was released from ODOC custody in June 2010. http://www.doc.state.ok.us/offenders/offenders.htm (offender lookup last accessed August 10, 2012).

All of this litigation history brings the matter to the recent date of September 5, 2012, when Plaintiff Harmon filed a second Motion for Contempt and Enforcement of Judgment for Permanent Prospective Injunctive Relief. Doc. # 170.  In this Motion, Plaintiff complains that Defendant Jones should be held in contempt for failing to comply with the Judgment for Permanent Prospective Injunctive Relief previously entered in this case.  Plaintiff asserts that officials at the James Crabtree Correctional Center ("JCCC") where he is confined have improperly suspended his participation in ODOC's religious diet program.  Plaintiff states that he was removed from the Kosher diet menu plan at JCCC on August 7, 2012, because he purchased "an 8 oz. bottle of strawberry jam from canteen at [JCCC] . . . ." and he was informed by JCCC officials that because he had violated ODOC policy OP-030112 he was temporarily suspended from the Kosher diet program in which he previously participated. He contends that this policy, specifically "attachment 'C'" of the policy, violates his First Amendment right to freely exercise his Jewish religion because it requires him to agree to a specific set of consequences, including increasingly severe but temporary suspensions from a religious diet program, when he is found to have failed to comply with the dictates of his stated religious beliefs.   As relief, Plaintiff requests that the Court "abolish/remove" "attachment 'C'" of this policy, hold Defendant Jones in contempt of the Court's permanent injunction Order, and restore him and "all violated inmates" to his previous Kosher diet.

In response to Plaintiff Harmon's Motion, Defendant Jones asserts that on August 7, 2012, JCCC officials temporarily suspended Plaintiff from the Kosher diet provided to inmates at JCCC after he violated the terms of ODOC's Kosher diet policies OP-030112 and

OP-070202 by purchasing non-Kosher food from the prison's canteen.  In his reply brief,

Plaintiff does not dispute the facts as alleged by Defendant Jones, although Plaintiff states

that he purchased the food item based on an "outdated" canteen list. Plaintiff's Reply (Doc.

# 183), at 6.

ODOC's policy OP-030112(VI)(A) with respect to the provision of Religious Diets

to Oklahoma inmates provides that

> All religious meals will be offered through a common pork-free
> or meat-free meal; Kosher or Halal diet.  An offender who
> wishes to receive one of these diets for religious reasons must
> submit a "Special/Religious Diet Request Form" (Attachment C,
> attached) to the facility food service supervisor. Offenders from
> any faith group may request a pork-free or meat-free diet.
>                    * * * *
> Rules for those receiving a Kosher or Halal diet and the
> consequences for violation of the rules are included on the
> "Special/Religious Diet Request Form" (Attachment C).

On the "Special/Religious Diet Request Form" (Attachment C), inmates who request

a Kosher Diet or other special or religious-based diet indicate by signing the form their

agreement that "[t]hey will not consume or possess any food that is not consistent with the

diet requested, regardless of the source of the food, unless they request and receive a diet

change."   The form also describes the consequences for violating the agreement.  For a first

violation, the inmate is suspended from the religious diet for 30 days and he or she may then

submit a new "Special/Religious Diet Request" form to be reinstated to the diet.

Preliminarily, the undersigned finds that an evidentiary hearing is not necessary in this

matter because both parties have submitted documentary evidence as well as briefs and

neither party has requested a hearing. Moreover, there is no dispute about the material facts. See Wyoming v. Livingston, 443 F.3d 1211, 1224 (10th Cir. 2004)("There is no need for a court to hold an evidentiary hearing in a matter when there are no material facts in dispute.").

In a civil contempt proceeding, the moving party must prove by clear and convincing evidence that the non-movant disobeyed a valid court order. United States v. Ford, 514 F.3d 1047, 1051 (10th Cir. 2008).  If the movant satisfies this burden, the burden shifts to the non-movant "to show either that he had complied with the order or that he could not comply with it." Id.

Civil contempt "consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." In re Dual-Deck Video Cassette Recorder Antitrust Litigation, 10 F.3d 693, 695 (9th Cir. 1993). Although this circuit has not explicitly recognized that a defense of substantial compliance with a court order exists, the court has assumed that such a defense exists in an unpublished order, Phone Directories Co., Inc. v. Clark, 209 Fed.App. 808, 815 (10th Cir. Dec. 20, 2006)(unpublished order).  The Tenth Circuit Court of Appeals has also stated in an unpublished order that "[a] defendant may be absolved from a finding of civil contempt if the defendant is able to show that it complied with a reasonable interpretation of [a court] order and if the defendant's action appears to be based on a good faith and reasonable interpretation of the order. . . . [I]t is a defense to a claim of civil contempt if the Defendant takes all reasonable steps and substantially complies with the court order." Spectra Sonics Aviation, Inc. v. Ogden City, 931 F.2d 63 (Table), 1991 WL 59369, * 2 (10th Cir. Apr. 19,

1991)(unpublished order).   See In re Dual-Deck Video Cassette Recorder Antitrust Litigation, 10 F.3d at 695 (concluding that "a person should not be held in contempt if his action appears to be based on a good faith and reasonable interpretation of the court's order") (internal quotation marks and brackets omitted).

In this circuit, a court's order must be interpreted "in the light of the issues and the purpose for which" the order was issued. Denver-Greeley Valley Water Users Ass'n v. McNeil, 131 F.2d 67, 69 (10th Cir. 1942).   In this case, the Court entered a Judgment for Permanent Prospective Injunctive Relief which directed Defendant Jones to provide the named Plaintiffs with Kosher meals.   There is no dispute that Plaintiff received Kosher meals until he was found by prison officials to have violated ODOC's policy governing the provision of Kosher diets to Oklahoma inmates.   There is also no dispute that JCCC officials suspended Plaintiff from the religious diet program for a 30-day period of time following which Plaintiff may request reinstatement to the religious diet program.

Courts have recognized that "prison administrators have a legitimate interest in working within a fixed budget." Beerheide v. Suthers, 286 F.3d 1179, 1186 (10th Cir. 2002). As the Court previously recognized in this case, "supplying a kosher diet at no charge to these three plaintiffs and ultimately, to others who request the same as a result of sincerely held religious beliefs would most certainly impact [O]DOC's budget and result in increased costs." Order, West, D.J. (Doc. # 44), at 5.   Further, the Court previously found that "[O]DOC already has in place an effective special diet policy that . . precludes inmate abuse of available special diets (although not religious diets) and that implementation of a policy

8

for likewise screening requests for religious diets would not be unduly burdensome." Id. at 5-6.

ODOC's religious diet policy, OP-030112, with its screening form, "Attachment C," is designed to prevent abuse of ODOC's religious diet policy, and the policy is reasonably related to the state agency's legitimate interest in working within its limited budget.  In view of Plaintiff Harmon's abuse of the religious diet policy, prison officials determined that Plaintiff should be temporarily suspended from the Kosher diet program.

ODOC has a rational interest in furthering its legitimate penological interests by suspending inmates from a religious diet program if they fail to adhere to the dictates of their expressed religious dietary beliefs.  Moreover, ODOC has reasonably interpreted the Court's permanent injunction Order by requiring that inmates who request a religious diet concomitantly agree to follow the requested religious diet or suffer specific consequences set forth in the policy. These consequences are narrowly-defined and do not permanently preclude an inmate from requesting re-admission to the religious diet program.  In light of the undisputed facts and the temporary consequences imposed upon Plaintiff consistent with ODOC's religious diet policy, it is clear that ODOC has not violated the terms of the Court's permanent injunction Order.  Under these circumstances, Plaintiff's Motion, which seeks to both alter the permanent injunction Order by requiring ODOC to abandon the portion of ODOC's religious diet policy which provides specific consequences for inmates who fail to comply with the policy's religious diet requirements and to hold Defendant Jones in contempt, should be denied.

<u>RECOMMENDATION</u>

Based on the foregoing findings, it is recommended that Plaintiff's Motion of Contempt and Enforcement of Judgment for Permanent Prospective Injunctive Relief (Doc. # 170) be DENIED.  The parties are advised of their respective right to file an objection to this Fifth Supplemental Report and Recommendation with the Clerk of this Court by <u>December 5th</u>, 2012, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72.  The failure to timely object to this Fifth Supplemental Report and Recommendation would waive appellate review of the recommended ruling. <u>Moore v. United States</u>, 950 F.2d 656 (10th Cir. 1991); <u>cf.</u> <u>Marshall v. Chater</u>, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Fifth Supplemental Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this ___15th_____ day of ____November____, 2012.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE

10