IN THE UNITED STATES DISTRICT COURT FOR **F I L E D**

THE WESTERN DISTRICT OF OKLAHOMA

JERRY HARMON,                              )
                                           )
            Plaintiff,                     )
                                           )
vs.                                        )      No. CIV-03-1465-W[1]
                                           )
JUSTIN JONES, Director, Oklahoma           )
Department of Corrections,                 )
                                           )
            Defendant.                     )

JAN  - 3 2013

ROBERT D. DENNIS, CLERK
U.S. DIST COURT, WESTERN DIST. OF OKLA.
BY _____ DEPUTY

## ORDER

On November 15, 2012, United States Magistrate Judge Gary M. Purcell issued his Fifth Supplemental Report and Recommendation in this matter and recommended that the Motion of Contempt and Enforcement of Judgment for Permanent Prospective Injunctive Relief filed by plaintiff Jerry Harmon, proceeding pro se, be denied. Harmon was advised of his right to object, and the matter now comes before the Court on Harmon's Objection to Fifth Supplemental Report and Recommendation [Doc. 187].

Upon de novo review,[2] the Court concurs with Magistrate Judge Purcell's suggested disposition of Harmon's request for relief. On February 8, 2006, the Court issued a Judgment for Permanent Prospective Injunctive Relief and ordered defendant Justin Jones, in his official capacity as Director of the Oklahoma Department of Corrections ("DOC"), "to immediately provide to . . . [Harmon a] Kosher diet[ ] at no cost," Doc. 106 at

_____

[1]The Court on February 26, 2004, consolidated this matter with No. CIV-03-99-W and No. CIV-03-125-W, see Doc. 20, and advised the parties that all future filings should reflect all three captions and case numbers. See id. The Court, however, has not in this instance directed the Clerk of the Court to file this Order in any case other than No. CIV-03-1465-W.

[2]The parties are familiar with the facts and procedural history of this case, and the Court has not restated either here except where necessary to resolve the instant dispute.

2, and further ordered that the diet should "comply with all nutritional requirements and standards currently applicable to the diets served to all other inmates in the custody of . . . [DOC]." Id. The Court determined that the injunction was "necessary to remedy a violation of . . . [Harmon's] right[ ] to freely exercise . . . [his] Orthodox Jewish religion as guaranteed by the first amendment to the United States Constitution." Id.

On September 15, 2011, Harmon filed a Motion for Contempt and Enforcement of Judgment for Permanent Prospective Injunctive Relief, wherein he complained that since his transfer to certain minimum security facilities, he had not consistently received a Kosher diet. He further complained that since his incarceration at John Lilley Correctional Center in Boley, Oklahoma, he not only had failed to receive a Kosher diet, but also had received meals that were calorie deficient.

In its Order issued on December 22, 2011, the Court found that prior to the entry of the Judgment for Permanent Prospective Injunctive Relief in this case, DOC had

> enacted a Protocol for Kosher Menu Preparation and Serving ("DOC Kosher Diet Protocol"), and all DOC facilities were instructed on the preparation, service and delivery of Kosher meals. . . .

Doc. 158 (citing Doc. 157-1; DOC OP-070202, Attachment A)(further citation omitted. The Court found further that

> [i]t [was] . . . undisputed that Harmon, while housed in DOC medium security prisons, [had] received a Kosher diet in compliance with the Court's Judgment for Permanent Prospective Injunctive Relief and DOC Kosher Diet Protocol and that those correctional facilities that follow[ed] DOC policy [had] . . . not violate[d] Kosher law.

Id. The Court determined that the evidence established at that time that Jones had taken "'"all reasonable steps" . . . in good faith to ensure compliance with the [C]ourt['s] . . . Judgment for Permanent Prospective Injunctive Relief . . . .'" Id. (quotations and footnote

omitted).

In the instant motion, Harmon has complained that Jones should be held in contempt because the officials at James Crabtree Correctional Center ("JCCC"), where he is currently incarcerated, have suspended his participation in DOC's religious diet program. Harmon has asserted that since August 7, 2012, he has not received a Kosher diet because he purchased "an 8 oz. bottle of strawberry jam from [JCCC's] canteen[3] . . . ," Doc. 170 at 3, and was informed that because he had violated DOC OP-030112 he was temporarily suspended from the Kosher diet program.

Harmon has challenged the constitutionality of DOC OP-030112 and specifically "Attachment C" thereto on the grounds that the attachment violates his first amendment right to exercise his religion since it requires him to agree to a specific set of consequences, including increasingly severe, but temporary, suspensions from DOC's religious diet program if he fails to comply with the dictates of his stated religious beliefs.[4] In the instant motion, Harmon has sought as relief an order from the Court that would "abolish/remove . . . Attachment 'C,'" Doc. 170 at 4, hold Jones in contempt and "restore all violated inmates back to their religious diets." Id.[5]

---

[3]Harmon has contended that he purchased the jam after relying on an outdated JCCC canteen list that listed the jam as Kosher. Compare Doc. 183-4 at 1 with Doc. 183-5 at 1 and Doc. 178-3.

[4]Harmon has argued that the Court's directive to Jones "to immediately provide to . . . [Harmon a] Kosher diet[ ] at no cost," Doc. 106 at 2, prohibits DOC from enacting any policies that would suspend his entitlement, even albeit temporarily, to a Kosher diet or that would police inmates' purchases or possession of food. Harmon has further contended that Attachment C should be declared invalid because it operates as "a hate crime" under title 21, section 850 of the Oklahoma Statutes. See Doc. 170 at 3.

[5]In his reply, Harmon has also sought among other things an investigation by a federal grand jury, see Doc. 183 at 9, and restitution in the amount of $65,000.00 "to each Jew that was

DOC OP-030112.VI.A.1 provides in relevant part:

All religious restricted meals will be offered through a common pork-free or meat-free meal; Kosher or Halal diet. An offender who wishes to receive one of these diets for religious reasons must submit a "Special/Religious Diet Request Form" (Attachment C, attached) to the facility food service supervisor. Offenders from any faith group may request a pork-free or meat-free diet.

DOC OP-030112.VI.A.2 further provides in relevant part that

[r]ules for those receiving a Kosher or Halal diet and the consequences for violation of the rules are included on the "Special/Religious Diet Request Form" (Attachment C).

DOC inmates by signing the "Special/Religious Diet Request Form" (Attachment C), indicate their agreement to "not consume or possess any food that is not consistent with the diet requested, regardless of the source of the food, unless they request and receive a diet change." Doc. 178-5 at 9. Attachment C also describes the consequences of violating that agreement. A first violation may result in a 30-day suspension of the religious diet and the requirement that the inmate execute a new "Special/Religious Diet Request" form to be reinstated to the diet. See id.

As Magistrate Judge Purcell found, Attachment C is designed to prevent abuse of DOC's religious diet policy. It is reasonably related to DOC's legitimate interests, and it provides only narrowly-defined and temporary consequences.

It is undisputed that Harmon voluntarily possessed food that was inconsistent with the Kosher diet he had requested and that he knew the consequences of his actions. See

removed by the use of OP-030112 . . . ." Id. at 10.

Doc. 178-4 at 1, ¶ 2.[6] JCCC officials were therefore authorized to suspend Harmon from the religious diet program for a period of thirty (30) days. It is likewise undisputed that Harmon has had the opportunity to seek readmission to the religious diet program.[7]

Based upon the record, the Court concludes that Jones has not violated the terms of the Court's Judgment for Permanent Prospective Injunctive Relief and that Harmon is therefore not entitled to any requested relief.[8]

Accordingly, the Court

(1) ADOPTS the Fifth Supplemental Report and Recommendation [Doc. 184] filed on November 15, 2012;

(2) DECLINES Harmon's request for an evidentiary hearing, see Doc. 187 at 6; and

(3) DENIES Harmon's Motion of Contempt and Enforcement of Judgment for Permanent Prospective Injunctive Relief [Doc. 170] file-stamped September 5, 2012.

ENTERED this 3rd day of January, 2013.

LEE R. WEST
UNITED STATES DISTRICT JUDGE

[6]While Harmon has contended that Jones has failed to present any evidence that he (Harmon) signed a copy of Attachment C at JCCC, Harmon has not argued that he was unaware of the consequences of his actions.

[7]See Affidavit of James Drawbridge (October 4, 2012) at 2, ¶ 8 (although Harmon was suspended from the Kosher meal list more than 30 days ago, as of October 4, 2012, Harmon had not reapplied to receive a Kosher diet).

[8]To prevail, Harmon "has the burden of proving, by clear and convincing evidence, that a valid court order existed, that the defendant had knowledge of the order, and that the defendant disobeyed the order." Reliance Insurance Co. v. Mast Construction Co., 159 F.3d 1311, 1315 (10th Cir. 1998)(citations omitted). The Court finds that Harmon has failed to meet his burden with regard to the third element.

5